No. _____

# In the United States Court of Appeals for the Fifth Circuit

_____

In re Jeffrey Paul Madison,

*Petitioner*.

_____

On Petition for a Writ of Mandamus from the United States District Court
for the Western District of Texas, Waco Division
Case No. 6:20-cv-01065-DTG

_____

**PETITION FOR WRIT OF MANDAMUS**

_____

Christopher L. Peele
Texas Bar No. 24013308
chris@pntlawfirm.com

Austin R. Nimocks
Texas Bar No. 24002695
austin@pntlawfirm.com

Michael C. Toth
Texas Bar No. 24100608
mike@pntlawfirm.com

PNT Law Firm
206 Wild Basin Rd. S.
Bldg. A, Ste. 206
Austin, Texas 78746
(512) 522-4893 (phone)

*Counsel for Petitioner*

## CERTIFICATE OF INTERESTED PERSONS

Counsel of record certifies that the following persons and entities have an interest in the outcome of this case.

| Petitioner–Third Party | Petitioner's Counsel |
|---|---|
| • Jeffrey Paul Madison | Christopher L. Peele |
| | Austin R. Nimocks |
| | Michael C. Toth |
| | PNT LAW FIRM |

| Plaintiff | Plaintiff's Counsel |
|---|---|
| • James Studensky, Chapter 7 Trustee for the following entities/debtors:<br>   ○ Little River Healthcare Holdings, LLC<br>   ○ Compass Pointe Holdings, LLC<br>   ○ Little River Healthcare Holdings, LLC<br>   ○ Timberlands Healthcare, LLC<br>   ○ King's Daughters Pharmacy, LLC<br>   ○ Rockdale Blackhawk, LLC<br>   ○ Little River Healthcare - Physicians of King's Daughters, LLC<br>   ○ Cantera Way Ventures, LLC<br>   ○ Little River Healthcare Management, LLC | Brad Thompson<br>Jacob P. Arechiga<br>James Earl<br>Duane Morris LLP<br><br>Joshua A. Romero<br>Michael C. Roberts<br>Peter C. Hansen<br>Sean E. Gallagher<br>Cody Lee Vaughn<br>Jackson Walker LLP<br><br>Brian T. Cumings<br>Graves, Dougherty, Hearon & Moody, P.C. |

i

| Defendant (Real Party in Interest) | Defendant's Counsel |
|---|---|
| • Health Care Service Corporation, a Mutual Legal Reserve Company, d/b/a Blue Cross and Blue Shield of Texas | Brian P. Kavanaugh<br>Scott D. Stein<br>Joseph R. Dosch<br>Jaime R. Simon<br>Jonathan A. Dussik<br>Meredith Greene Jalali<br>Thomas D. Hoyt<br>Sidley Austin LLP<br><br>Max Ciccarelli<br>Ciccarelli Law Firm |

| Respondent | |
|---|---|
| • Magistrate Judge Derek T. Gilliland | |

*/s/ Austin R. Nimocks*

Austin R. Nimocks
*Counsel for Petitioner*

# TABLE OF CONTENTS

Certificate of Interested Persons ............................................................................. i

Table of Contents.................................................................................................. iii

Table of Authorities ............................................................................................. iv

Statement Concerning Oral Argument.................................................................. vi

Statement of Relief Sought .................................................................................. 1

Issue Presented..................................................................................................... 1

Statement Of Facts .............................................................................................. 1

    I.     Factual and Procedural History. ........................................................... 1

    II.    District Court Proceedings In Madison's Criminal Matter .................. 3

    III.   The New Deposition Sought by BCBSTX ............................................. 5

Reasons The Writ Should Issue ........................................................................... 8

    I.     The Petitioner's Entitlement To The Writ Is Clear .............................. 8

        A.    Petitioner's Fifth Amendment Rights Are Clearly Before The Court .............................................................................. 8

        B.    Granting The Motion To Quash Is Appropriate Given The Unique Circumstances Presented ......................................... 10

        C.    The District Court Must Forego Question-By-Question Analysis When The Outcome Is Clear.................................... 11

        D.    BCBSTX Seeks An Unwarranted Spectacle Which Imposes An Undue Burden On Petitioner ........................................... 13

        E.    BCBSTX's Negative Inference ................................................ 14

    II.    There Is No Adequate Remedy By Appeal, And Mandamus Is Appropriate Under The Circumstances ............................................. 14

    III.   The Court Should Stay The District Court's Order Pending The Outcome Of This Petition.................................................................. 15

Conclusion ......................................................................................................... 15

Certificate of Service.......................................................................................... 16

Certificate of Compliance................................................................................... 17

## TABLE OF AUTHORITIES

**Cases**

*Adams Extract Co. v. Franey*, 449 U.S. 1102 (1981) ................................................ 9

*Baxter v. Palmigiano*, 425 U.S. 308 (1976)............................................................ 15

*FDIC v. Fid. & Deposit Co. of Md.*, 45 F.3d 969 (5th Cir. 1995) .............................. 16

*Hernandez v. Hankook Tire Am. Corp.*, No. 2:12-CV-03618-WMA, 2014
    WL 3052545 (N.D. Ala. July 3, 2014).................................................................. 10

*In re Corrugated Container Anti-Tr. Litig.*, 620 F.2d 1086 (5th Cir. 1980) ......9, 10, 11

*In re Gee*, 941 F.3d 153 (2019) ............................................................................... 8

*In re Volkswagen of America, Inc*., 545 F.3d 304 (5th Cir. 2008) (en
    banc) .................................................................................................................. 8

*Kastigar v. U.S.*, 406 U.S. 441 (1972) ...................................................................... 9

*Roznovsky v. Estelle*, 546 F.2d. 1185 (5th Cir. 1977) .............................................. 10

*Sec. & Exch. Comm'n v. First Fin. Grp. of Texas, Inc.*, 659 F.2d 660 (5th
    Cir. 1981) .......................................................................................................... 13

*U.S. v. Gomez-Rojas*, 507 F.2d 1213 (5th Cir. 1975)............................................... 13

*U.S. v. L'Hoste*, 640 F.2d 693 (5th Cir. 1981).......................................................... 10

*U.S. v. Mares*, 402 F.3d 511 (5th Cir. 2005) ........................................................... 13

*U.S. v. Melchor Moreno*, 536 F.2d 1042 (5th Cir. 1976)....................................13, 14

*U.S. v. Sharp*, 920 F.2d 1167 (4th Cir. 1990) ......................................................... 10

*U.S. v. Waddell*, 507 F.2d 1226 (5th Cir. 1975) ...................................................... 13

U.S. v. Wright, 845 F. App'x 334 (5th Cir. 2021)...................................................12, 13

*Wehling v. Columbia Broadcasting System*, 608 F.2d 1084 (5th Cir.
    1979)................................................................................................................... 9

**Statutes**

18 U.S.C. § 371 .......................................................................................................

42 U.S.C. § 1320a-7b ...............................................................................................

**Rules**

Fed. R. Civ. P. 45 ................................................................................................ 10

**Other Authorities**

U.S. Const. amend. V.......................................................................................... 10

## STATEMENT CONCERNING ORAL ARGUMENT

Petitioner does not believe that oral argument is necessary because the district court's error is clear, as is Petitioner's entitlement to the writ.

## Statement of Relief Sought

Petitioner Jeffrey Paul Madison, a non-party in the proceeding below, seeks mandamus relief directing the district court to quash a subpoena for him to appear at a deposition--a deposition granted by the district court for the sole purpose of exploring criminal charges against him--and, thus, testify in violation of his Fifth Amendment privilege against self-incrimination.

## Issue Presented

Whether the district court erred in denying Petitioner's motion to quash a subpoena ad testificandum when the subpoena, and the purpose for which it was permitted by the district court, goes exclusively to matters that invoke Petitioner's Fifth Amendment privilege against self-incrimination.

## Statement Of Facts

### I.    Factual and Procedural History.

Rockdale Blackhawk, LLC, d/b/a Little River Healthcare (hereinafter "Little River") was a Texas limited liability company formed in 2006 and currently inactive. Little River was a rural Critical Access Hospital ("CAH"). Petitioner Madison was a principal of Little River and its Chief Executive Officer.

Beginning in 2011, Little River determined that it could earn revenue by encouraging physicians to order lab testing through Little River. That lab testing was billed under the hospital's insurance contracts, including a contract with Blue Cross and Blue Shield of Texas ("BCBSTX"). Little River paid different marketing groups to market Little River's labs services to the physicians. The strategy worked as Little River's lab testing volume grew significantly.

Beginning in 2016, however, a series of payment issues and disputes arose between Little River and BCBSTX. Those payment issues continued to grow, causing Little River severe cash flow problems. As a result, Little River and its affiliates filed for bankruptcy on December 7, 2018.

In the interim, on April 17, 2018, Little River invoked the contractual arbitration provisions in its contract with BCBSTX. The dispute went to arbitration before Hon. Harriet O'Neill. On May 6, 2020, Judge O'Neill found in favor of Little River and awarded Little River $97,447,249 in damages, penalties, attorneys' fees, costs, and pre-judgment interest. App. 003–004.

On September 14, 2020, Madison and others sued BCBSTX for, *inter alia*, defamation, business disparagement, and unfair competition. App. 046–069.[1] Though stayed, the case remains pending.

On September 15, 2020, the Trustee initiated an adversary proceeding against BCBSTX ("*Studensky v BCBSTX*"). App. 070–097.[2] *Inter alia*, the Trustee accuses BCBSTX of business disparagement, tortious interference, and unfair competition. App. 086–094.[3]

Madison was fully deposed by BCBSTX, twice, in *Studensky v. BCBSTX*.

---

[1] *Madison et al. v. Health Care Servs. Corp. d/b/a Blue Cross and Blue Shield of Texas*, No. 6:20-cv-00835-ADA-DTG (W.D. Tex. Sept. 14, 2020).

[2] *James Studensky, Chapter 7 Trustee for Little River Healthcare Holdings, LLC, et al. v Blue Cross and Blue Shield of Texas*, Adversary Proceeding No. 20-06095 (Bankr. W.D. Tex.). On August 25, 2023, the district court ordered the matter transferred to the United States District Court for the Western District of Texas, Waco Division for further proceedings and trial. App. 675–676 (Dkt. 27).

[3] A few weeks prior, on August 24, 2020, the bankruptcy Trustee filed a separate adversary proceeding in which the Trustee accused UnitedHealthcare of much of the same conduct of which BCBSTX is accused. *See James Studensky, Chapter 7 Trustee for Little River Healthcare Holdings, LLC, et al., v. UnitedHealthcare Insurance Company, United Healthcare of Texas, Inc., UnitedHealthcare Benefits of Texas, Inc., UnitedHealthcare Community Plan of Texas, LLC., et al.*, Adv. No. 20-06093-rbk (Bankr. W.D. Tex.). Madison was also considered a witness by the parties in that matter.

App. 098–317. On May 25, 2022, Madison gave his first deposition. App. 098–189. During the deposition, Madison did not assert his Fifth Amendment right. *Id*. On December 15, 2022, Madison gave his second deposition and answered questions about both the indictment and *qui tam* complaint. *See* infra n.6; App. 190–317.

Nevertheless, on May 20, 2024, BCBSTX served Madison with a *third* deposition for June 25, 2024. App. 318–320. Madison advised BCBSTX that he would assert his Fifth Amendment privilege as to all questions and conferred with BCBSTX in a good faith effort to comply with the subpoena given Madison's pending criminal charges in *U.S. v. Hertzberg, et al.*, Case No. 6:22-cr-00003-JDK-JDL (E.D. Tex.), *see infra* Section II., but those discussions came to an impasse.

On June 17, 2024, Madison filed a Motion to Quash Subpoena for Deposition. App. 321–357 (Dkt. 147). After briefing the motion, App. 358–404 (Dkt. 148), 405–420 (Dkt. 151), the parties appeared for a hearing before Magistrate Judge Gilliland on July 18, 2024. App. 421–447. At the end of the hearing, Magistrate Judge Gilliland denied Madison's Motion to Quash Subpoena for Deposition. App. 444. An order regarding the same was entered on July 22, 2024. App. 448 (Dkt. 160). Magistrate Judge Gilliland did not explain the basis for his ruling orally or in his written order.[4]

## II.    District Court Proceedings In Madison's Criminal Matter

The background facts of Madison's indictment and criminal matter are uncontroverted and matters the Court may accept on judicial notice.

---

[4] The Magistrate Judge is the final authority for the district court on this matter. Per the consent of the parties and June 25, 2024 order of the district judge, the case was reassigned to Judge Derek T. Gilliland for all proceedings in accordance with 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. *Studensky v. BCBSTX*, Dkt. 149.

On January 13, 2022, Madison and eighteen others associated and/or do-
ing business with Little River were charged in a one-count indictment with
conspiracy to violate the Anti-Kickback Statute, 18 U.S.C. § 371 and 42 U.S.C.
§ 1320a-7b (the "AKS"), in connection with the referral of patients for labor-
atory testing at two Texas hospitals, Little River and Stamford Hospital. *U.S. v.
Hertzberg, et al.*, Case No. 6:22-cr-00003-JDK-JDL (E.D. Tex.), Dkt. 1.[5] The In-
dictment alleges, in pertinent part, that Madison conspired to do the follow-
ing:

>    (a)    To violate the Anti-Kickback statute by knowingly and will-
>           fully soliciting or receiving any remuneration, including
>           any kickback, directly or indirectly, overtly or covertly, in
>           cash or in kind, in return for referring beneficiaries for the
>           furnishing or arranging for the furnishing of any item or
>           service or in return for or in return for ordering or recom-
>           mending the ordering of any item or service for which
>           payment may be made in whole or in part under a Federal
>           health care program, in violation of 42 U.S.C. §§ 1320a-
>           7b(b)(l)(A) and 1320a-7b(b)(l)(B); and
>    (b)    To violate the Anti-Kickback statute by knowingly and will-
>           fully offering or paying remuneration, including any kick-
>           back, directly or indirectly, overtly or covertly, in cash or
>           in kind, to any person to induce the referral of beneficiar-
>           ies for the furnishing or arranging for the furnishing of any
>           item or service or to induce another person to order or
>           arrange for or recommend the ordering of any item or ser-
>           vice for which payment may be made in whole or in part
>           under a Federal health care program, in violation of 42
>           U.S.C. §§ 1320a-7b(b)(2)(A) and 1320a-7b(b)(2)(B).

*Id.* In support of the AKS theory, the Indictment alleges Little River paid mar-
keters, who then paid managed services organizations ("MSOs"), who then

---

[5] The indictment is provided in the Appendix (App. 449–520) and the only record from
Madison's criminal trial included as part of the Appendix. Petitioner can supplement the
Appendix with additional portions of the criminal court record, if needed.

paid physicians in exchange for those physicians referring laboratory samples to LRH. *Id*.

Madison was not aware of this indictment in January 2022 as it was under seal. The indictment was unsealed in June 2022.[6]

Trial on the Indictment commenced before Judge Kernodle on October 16, 2023. *Id*. (Dkt. 871). The trial continued through November 30, 2023, at which time the jury returned a guilty verdict as to Madison and the other four defendants that proceeded to trial. *Id*. (Dkt. 1020). Madison did <u>not</u> testify at trial.

On February 12, 2024, Madison filed a Rule 29 Motion for Judgment of Acquittal. *Id*. (Dkt. 1049). Madison also joined the motions for new trial and judgments of acquittal filed by his co-defendants. *Id*. (Dkt. 1060). The government responded to Madison's motion on April 19, 2024. *Id*. (Dkt. 1132). On May 24, 2024, Madison filed his reply brief in support of his Rule 29 Motion for Judgment of Acquittal. *Id*. (Dkt. 1162).[7]

The district court (E.D. Tex.) has yet to decide Madison's post-trial motions and Madison has not been sentenced. If the district court denies Madison's post-trial motions, an appeal to this Court shall ensue. Thus, not only is there no final judgment in the district court, but the matter against Madison is far from complete.

### III.    The New Deposition Sought by BCBSTX

Although fact discovery in the underlying proceeding ended in May 2022,

---

[6] On April 4, 2022, a *qui tam* complaint alleging the same basic kickback scheme for which Madison was indicted was unsealed. *U.S. ex rel. STF, LLC v. Grottenthaler et al.*, Case No. 4:16-CV-547 (E.D. Tex.), Dkt. 1. App. 521–674.

[7] Madison continues to vigorously contest his conviction and, through these motions, is maintaining his statute of limitations, advice of counsel, and other defenses, along with challenging much of the evidence introduced at trial.

App. 682 (Tr. of Hr'g on Apr. 25, 2024), the parties were paying attention to Madison's criminal trial. App. 677–770 (Tr. of Hr'g on Apr. 25, 2024).

After the guilty verdict in the criminal trial, BCBSTX filed a Motion to Take Limited Discovery Based on Newly Available Evidence (from Madison's criminal trial) on February 24, 2024. App. 772–882 (Dkt. 103). Though Madison did not testify at his criminal trial, BCBSTX wanted to depose Madison for a third time based on documentary evidence and text messages introduced against Madison at his criminal trial.[8] *Inter alia*, BCBSTX contends "BCBSTX should be granted leave to seek targeted discovery regarding relevant facts that were unavailable to BCBSTX prior to the trial in the Criminal Case." App. 778 (Dkt. 103).

Moreover, as the specific basis for re-deposing Madison, BCBSTX offers that the "government introduced [at Madison's criminal trial] many communications, which were not produced in discovery in this case, evidencing Madison's knowledge of Little River marketers' affiliation with MSOs, including the text messages in which discussion of Little River's 'MSO model' was improperly redacted in Madison's subpoena production in this case." App. 779 (Dkt. 103).

BCBSTX attached to its motion well over 100 pages of transcript excerpts

---

[8] BCBSTX opened its motion, in pertinent part, as follows:

> [O]n November 30, 2023, long after discovery in this case closed and following a six-week trial, an Eastern District of Texas jury found Little River's former CEO Jeffrey Madison guilty of conspiring to violate the Anti-Kickback Statute. During the course of that trial, the government introduced significant evidence establishing Madison's guilt and, more importantly, made public the details of the healthcare fraud conspiracy that fueled Little River's rapid growth and caused its eventual demise. … Evidence regarding the conspiracy perpetrated by Little River's management is discoverable in this case and essential to BCBSTX's defense at trial.

App. 773 (Dkt. 103).

and documentary evidence from Madison's criminal trial--covering the topics BCBSTX intends to ask Madison about in his third deposition. App. 787–882, 891–923 (Dkt. 103.) BCBSTX continued this refrain in its reply brief. App. 883–923 (Dkt. 108) ("The Trustee does not dispute that significant, new evidence regarding the conspiracy in which Little River's former executives partici-pated has become available as a result of proceedings in the Criminal Case following the close of discovery in this case.").

On April 25, 2024, the request of BCBSTX to re-depose Madison (and oth-ers) came for hearing before the district court. At the hearing, BCBSTX offered the following:

> So we've asked to take a limited number of depositions to explore those documents that were revealed during the criminal trial, much of which involves text messages. It will come as no surprise to this Court, I'm sure, that criminal conspiracies don't often occur in the day-light. They weren't -- they weren't set forth in emails that were pro-duced out of Little River's email systems. Most of the evidence was conversations, phone calls, and text messages. In addition, there's tes-timony that came to light that wasn't previously available.

> So that's the focus of our request.

> …

> Second, even if Mr. Madison had not been convicted, we'd still be here on this motion asking for the very same thing, because the evi-dence that came out at that trial is what's most important. It is not okay to pay bribes for commercially insured patients. The defense in that case by the end of trial was not "this didn't happen." It's that we didn't mean to pay anything on the federally insured patients, and, therefore, we didn't have the intent to violate. We didn't have the in-tent necessary for the conspiracy charge.

> So much of the evidence that we're talking about that's high-lighted in our motion, it goes to the underlying conduct regardless of the outcome.

App. 683, 685 (Tr. of Hr'g on Apr. 25, 2024).

The district court granted BCBSTX's limited request for a limited reopening of discovery. The district court stated:

> THE COURT: Okay. All right. Thank you, Mr. Roberts. I'm going to grant the request for the depositions primarily in this case, given the criminal trial and the evidence that came out in that, I think, if anything, demonstrates good cause to reopen discovery, though we'll limit those depositions to each of them less than four hours, and they need to be completed by the end of June. And it will not be a basis to move the trial date.

App. 703 (Tr. of Hr'g on Apr. 25, 2024).


## REASONS THE WRIT SHOULD ISSUE

Mandamus should issue because (1) the petitioner's Fifth Amendment privilege against self-incrimination is threatened by a forced deposition whose sole purpose regards the petitioner's alleged guilt and participation in an alleged criminal conspiracy; (2) there is no other adequate means to obtain relief; and (3) the writ is appropriate under the circumstances. *In re Gee*, 941 F.3d 153 (5th Cir. 2019) (per curiam); *In re Volkswagen of Am., Inc.*, 545 F.3d 304 (5th Cir. 2008) (en banc).

### I.    The Petitioner's Entitlement To The Writ Is Clear

The district court erred by not quashing the subpoena and ordering Petitioner to appear for a testimonial event whose sole, limited purpose regards matters that implicate Petitioner's Fifth Amendment privilege against self-incrimination.

#### A.    Petitioner's Fifth Amendment Rights Are Clearly Before The Court

At no point does BCBSTX or the district court contend or suggest that

Petitioner's Fifth Amendment privilege is not as issue. Nor could they.

The Fifth Amendment provides that "(n)o person ... shall be compelled in any criminal case to be a witness against himself ... ." U.S. Const. amend. V. This privilege against self-incrimination "can be asserted in any proceeding, civil or criminal, administrative or judicial, investigatory or adjudicatory ... ." *Kastigar v. U.S.*, 406 U.S. 441, 444 (1972) cert. denied sub nom. *Adams Extract Co. v. Franey*, 449 U.S. 1102 (1981).[9]

Madison may invoke his Fifth Amendment privilege when he "reasonably apprehends a risk of self-incrimination, ... though no criminal charges are pending against him, ... and even if the risk of prosecution is remote." *In re Corrugated Container Anti-Tr. Litig.*, 620 F.2d 1086, 1091–92 (5th Cir. 1980) (quoting *Wehling v. Columbia Broadcasting System*, 608 F.2d 1084, 1087 n.5 (5th Cir. 1979) (citations omitted)). And the Fifth Amendment does not require Madison to "play the odds" of prosecution. *Hernandez v. Hankook Tire Am. Corp.*, No. 2:12-CV-03618-WMA, 2014 WL 3052545, at *3 (N.D. Ala. July 3, 2014) (citing *In re Corrugated Container*, 620 F.2d at 1091). The privilege must be sustained if it is not "perfectly clear" that the witness's answers "cannot possibly" tend to incriminate. *Hoffman v. U.S.*, 341 U.S. 479, 488 (1951); *see U.S. v. Goodwin*, 625 F.2d 693, 700–01 (5th Cir. 1980).

The court determines whether a witness's silence is justified. *Roznovsky v. Estelle*, 546 F.2d. 1185, 1187 (5th Cir. 1977). Indeed, a court is to presume the reasonableness of Madison's claimed apprehension of prosecution unless genuine questions exist about the government's legal ability to prosecute. *See, e.g.*, *U.S. v. Sharp*, 920 F.2d 1167, 1171 (4th Cir. 1990) (citing the

---

[9] Accordingly, Rule 45 allows the quashing of a subpoena if it "requires disclosure of privileged or other protected matter, if no exception or waiver applies," or if it "subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(iii)–(iv).

government's constitutional obligation to faithfully execute the laws).[10]

The Fifth Amendment may be asserted by Madison, who is under indictment, until a sentence has been fixed and judgment of conviction is final. *See Mitchell v. U.S.*, 526 U.S. 314, 326 (1999). As made clear by the facts, *supra*, Madison has not been sentenced and his post-trial motions remain pending. If one or more of Madison's post-trial motions is granted, a new trial is likely forthcoming. Alternatively, if Madison's post-trial motions are denied, an appeal is forthcoming. Regardless, any judgment of conviction that may be forthcoming is far from final.

### B.    Granting The Motion To Quash Is Appropriate Given The Unique Circumstances Presented

A Fifth Amendment invocation is generally evaluated on a question-by-question basis. A court asks the following:

(1) is the answer sought incriminating on its face or in context (*e.g.*, inconsistent with previous sworn testimony); and

(2) is the witness's asserted fear of criminal prosecution reasonable under the circumstances?

*U.S. v. Redhead*, 194 Fed. Appx. 234, 236 (5th Cir. 2006) (citing *Hoffman*, 341 U.S. at 486–87; *Steinhrecher v. C.I.R.*, 712 F.2d 195, 198 (5th Cir. 1983)).

Here, the answer to both of these questions is unequivocally "yes," as to every conceivable query or line of questioning that BCBSTX intends to pursue in this matter. Multiple proofs warrant this conclusion.

First, as noted, the sole basis for which BCBSTX sought a third deposition

---

[10] The court does not have the power to grant judicial immunity to Madison so that he may comply with the subpoena. The Fifth Circuit does not approve grants of judicial use immunity. *See e.g.*, *U.S. v. L'Hoste*, 640 F.2d 693, 695 (5th Cir. 1981). The decision to confer witness immunity is for the executive branch and not the judiciary. *See, e.g.*, *In re Corrugated Container*, 620 F.2d at 1094–95.

from Petitioner is to ask him about evidence presented against him in his criminal trial. App. 677–923. BCBSTX does not dispute this. In fact, in responding to Madison's Motion to Quash, BCBSTX reaffirmed its motive and plan. App. 361 (Dkt. 148) ("In light of the new and damning evidence which emerged in the criminal trial, on February 23, 2024, BCBSTX moved for a limited reopening of discovery, to allow BCBSTX to depose Madison and several other witnesses associated with Little River's kickbacks for referral of both commercially and federally insured patients.").

Second, as noted, the reopening of discovery by the district court, nearly two years after the conclusion of fact discovery, was narrow and limited in scope--regarding only Madison's criminal trial. And the sole basis for which the district court permitted a third deposition from Madison is so that BCBSTX can ask him about evidence presented against him in his criminal trial. App. 374.

Third, if any doubt existed, though it has had multiple opportunities to do so, BCBSTX has made no offer of proof that it has any questions for Madison that do not implicate his Fifth Amendment privilege against self-incrimination. Obviously, it does not.

### C.    The District Court Must Forego Question-By-Question Analysis When The Outcome Is Clear

As this Court addressed in *U.S. v. Wright*, counsel may invoke a client's Fifth Amendment privilege. 845 F. App'x 334, 337 (5th Cir. 2021). "After a Fifth Amendment privilege is asserted, the district court should inquire 'into the legitimacy and scope of the ... assertion.'" *Id.* (quoting *Goodwin*, 625 F.2d at 701).

Typically, "[a] blanket refusal to testify is unacceptable." *United States v. Melchor Moreno*, 536 F.2d 1042, 1049 (5th Cir. 1976). But

we have upheld a district court's acceptance of an invocation without further questioning when the district court was "presented with sufficient evidence with which to understand the likely implications of [the witness's] testimony and, thus, the scope of his privilege." [*U.S. v.*] *Mares*, 402 F.3d [511,] 515 [(5th Cir. 2005)].

*Id.*

Thus, blanket assertions of a Fifth Amendment privilege, by counsel, are warranted when the Court finds that Madison could "legitimately refuse to answer essentially all relevant questions," *U.S. v. Gomez-Rojas*, 507 F.2d 1213, 1220 (5th Cir. 1975), because of the threat of incrimination. *Sec. & Exch. Comm'n v. First Fin. Grp. of Texas, Inc.*, 659 F.2d 660, 668–69 (5th Cir. 1981); *see U.S. v. Waddell*, 507 F.2d 1226, 1228 (5th Cir. 1975) (citing *Gomez-Rojas*, 507 F.2d at 1220). Thus, the court decides after conducting "a particularized inquiry, deciding, in connection with each specific area that the questioning party seeks to explore, whether or not the privilege is well-founded." *U.S. v. Melchor Moreno*, 536 F.2d 1042, 1049 (5th Cir. 1976).

Here, that standard is easily met. In *Wright*, this Court concluded "that the district court lacked 'sufficient evidence with which to understand the likely implications of [Robinson's] testimony and, thus, the scope of his privilege.'" *Wright*, 845 F. App'x at 337. But here, there is overwhelming, uncontested evidence regarding the implications of Madison's prospective testimony—the new deposition regards Madison's conviction and the evidence introduced against him in the criminal trial. But even if a particularized inquiry is needed, the district court already did it, granting the additional discovery because of and to address evidence against Madison from his criminal trial. App. 372–376 (Dkt. 148-1).

That everything BCBSTX wants to address in a third deposition of Madison is completely based on the criminal trial and Madison's conviction is not

in dispute.

### D. BCBSTX Seeks An Unwarranted Spectacle Which Imposes An Undue Burden On Petitioner

BCBSTX wants to depose Madison for a third time. BCBSTX wants to depose Madison because of his criminal conviction. BCBSTX intends to only ask Madison about evidence presented against him in the criminal matter. BCBSTX acknowledges that Madison will answer no questions, asserting his Fifth Amendment privilege in toto. App. 359 (Dkt. 148).

So, why go through the exercise at all? BCBSTX offers nothing, except its desire for Madison to "appear." This is a frequent refrain of BCBSTX--for Madison to "appear." App. 359 (Dkt. 148 at 2) ("The only question is whether, given his stated intention to invoke the Fifth Amendment as to every question … it is too burdensome for Madison to appear for a four-hour deposition."); App. 364 (Dkt. 148 at 7) ("Madison should be ordered to appear for his noticed deposition, even if he plans to invoke the Fifth Amendment on a question-by-question basis."); App. 365 (Dkt. 148 at 8) ("At this stage, the Court need only decide whether Madison must appear for his deposition."); App. 368 (Dkt. 148 at 11) ("The Court should reject this argument and require Madison to appear for his deposition.").

Notwithstanding the history of antagonism between Madison and BCBSTX,[11] BCBSTX can point to no authority affirming a right for it to require one to just "appear," especially where it is a certainty that substantive testimony will not occur. This is why this Court in *Wright* confirmed that when the outcome is a foregone conclusion, the question-by-question analysis can be

---

[11] *See supra* Little River's arbitration award against BCBSTX and Madison's pending lawsuit against BCBSTX.

jettisoned and a subpoena quashed.

### E.    BCBSTX's Negative Inference

BCBSTX may have an interest in a negative inference.[12] When a party testifies at a civil trial, admission of the Fifth Amendment privilege takes the form of an instruction that the jury may infer that the answer to a question as to which the party has invoked the privilege would be unfavorable to that party. *See Baxter v. Palmigiano*, 425 U.S. 308, 318 (1976). When a non-party witness at a civil trial invokes the privilege, an adverse inference instruction may also be given, provided there is corroborating evidence of the adverse facts to be inferred and those facts are otherwise admissible. *FDIC v. Fid. & Deposit Co. of Md.*, 45 F.3d 969, 977–78 (5th Cir. 1995).

If BCBSTX seeks a negative inference instruction, it can obtain it. Madison has offered to execute an affidavit or declaration that all questions BCBSTX intends to ask with result in Madison's invocation of his Fifth Amendment privilege. App. 405–420 (Dkt. 151). As noted by Madison to the district court, Madison did just this for another insurance company in a related proceeding, thereby giving that carrier the evidentiary basis to seek a negative inference. App. 412–420. BCBSTX has declined this offer, instead demanding that Madison merely "appear."

## II.    There Is No Adequate Remedy By Appeal, And Mandamus Is Appropriate Under The Circumstances

Petitioner lacks an adequate remedy by appeal because the district court refused to certify the interlocutory order denying petitioner's motion to quash for appeal. App. 445, 448. In the interim, per the district court's order,

---

[12] While Madison raised this as part of his motion to quash, App. 407–408 (Dkt. 151), BCBSTX has not acknowledged any intent to seek a negative inference. App. 358–404 (Dkt. 148); App. 421–447 (Tr. of Hr'g on Jul. 18, 2024).

Madison's deposition has been scheduled for August 16, 2024.

For the same reasons, a writ of mandamus is appropriate. The Court should issue the writ and direct the district court to: (1) Grant Madison's motion to quash; and (2) Permit BCBSTX to seek a negative inference instruction via stipulation, should BCBSTX wish to pursue such an instruction.

### III.    The Court Should Stay The District Court's Order Pending The Outcome Of This Petition

Madison's third deposition by BCBSTX, per the district court's order, has been scheduled for August 16, 2024. Madison respectfully asks this Court to stay the district court's order that Madison appear for that deposition, pending the outcome of this petition.

Conclusion

The petition for writ of mandamus should be granted.

Respectfully submitted.

Christopher L. Peele
Texas Bar No. 24013308
chris@pntlawfirm.com

*/s/ Austin R. Nimocks*
Austin R. Nimocks
Texas Bar No. 24002695
austin@pntlawfirm.com

Michael C. Toth
Texas Bar No. 24100608
mike@pntlawfirm.com

PNT LAW FIRM
206 Wild Basin Rd. S.
Bldg. A, Ste. 206
Austin, Texas 78746
(512) 522-4893 (phone)

*Counsel for Petitioner*

**CERTIFICATE OF SERVICE**

I certify that on July 30, 2024, this petition was served via e-mail on counsel for the Plaintiff below, the Defendant (Real Party in Interest) below, and transmitted to the clerk of the Court. A copy will also be sent to the Respondent, Hon. Magistrate Judge Derek T. Gilliland of the Western District of Texas. Counsel further certifies that: (1) any required privacy redactions have been made in compliance with Fifth Circuit Rule 25.2.13; (2) the electronic submission is an exact copy of the paper document in compliance with Fifth Circuit Rule 25.2.1; and (3) the document has been scanned with the most recent version of Symantec Endpoint Protection and is free of viruses.

 /s/ Austin R. Nimocks 
Austin R. Nimocks
*Counsel for Petitioner*

**CERTIFICATE OF COMPLIANCE**

with type-volume limitation, typeface requirements,
and type-style requirements

1.  This petition complies with the type-volume and page limitations of
    Fed. R. App. P. 21(d) because it contains 5,402 words in toto and only
    4,362 words, excluding the parts exempted by Fed. R. App. P. 32(f).

2.  This petition complies with the type-volume limitation of Fed. R. App.
    P. 27(d)(2) because it contains 4,362 words, excluding the parts of the
    petition exempted by Fed. R. App. P. 32(f).

3.  This petition complies with the typeface and type-style requirements
    of Fed. R. App. P. 27(d)(1)(E), 32(a)(5), Fed. R. App. P. 32(a)(6), and Fed.
    R. App. P. 32(c) because it uses Equity Text B 14-point type face
    throughout, and Equity Text B is a proportionally spaced typeface that
    includes serifs.

       /s/ Austin R. Nimocks

       Austin R. Nimocks

Dated: July 30, 2024       *Counsel for Petitioner*